UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FOUAD ALI,

    Plaintiff,

v.                                                               Case No. 19-cv-971-pp

QURE MEDICAL,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT (DKT. NO. 5), DENYING PLAINTIFF'S LETTER MOTION TO COMPEL DEFENDANT TO PROVIDE DOCUMENTS (DKT. NO. 13), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 17) AND GIVING PLAINTIFF A LAST OPPORTUNITY TO FILE AN AMENDED COMPLAINT OR FACE DISMISSAL OF HIS LAWSUIT**

       The plaintiff is representing himself. On July 8, 2019, he filed a complaint suing "Qure Medical." Dkt. No. 1. On page four of the form complaint, he marked the box for "I am suing for a violation of federal law under 28 U.S.C. § 1331." Id. at 4. In the section of the complaint that asked him to explain who violated his rights, what each person did, when they did it, where they did it and why, the plaintiff listed seven things:

       1.     In relation to someone named John Gomez, whom the plaintiff says was a "supervisor," the plaintiff says that he went back to work after having surgery. Id. at 2. He says he had a note from his doctor saying that he should be given "light Dude"—the court thinks the plaintiff means "light duty"—with no machines for a few weeks. Id. The plaintiff says that "for some

1

reason he"—the court assumes the plaintiff means John Gomez—"let me work on the machine from the first day I back." Id.

2. In relation to someone named "Raymond," whom the plaintiff describes as "Lead," the plaintiff says that Raymond "let" the plaintiff "work so hard on the machine without pity and no mercy," and that Raymond asked the plaintiff for more recycle and parts so that Raymond could get credit and bonus. Id. The plaintiff alleges that because of this, he was back "too many times to the emergency." Id.

3. In relation to someone named "Juan" or "Juaa," whom the plaintiff describes as an inspector, the plaintiff says that she gave him a hard time all the time; he says that when it was her turn to "check [his] parts" to see if they were good or bad, she would "reject all," although she knew that the plaintiff was experienced and knew the difference between the good parts and the bad parts. Id. The plaintiff also says that "Juan" or "Juaa" knew he had applied for her position—the inspector position—"so [he] can't get it." Id.

4. Regarding quality supervisor Stephanie Fellion, the plaintiff says that she denied him the inspector position when he applied for it. Id. at 3. He alleges that the same day, Fellion "ran to the other employee"—a "girl" whose name the plaintiff forgot—and asked that other employee to apply for the inspector position, even though the other employee was a temp-to-hire and not a permanent employee. Id.

5. Regarding supervisor Dan Grauger, the plaintiff says that Grauguer was "harassing [him] like crazy" from the first day Grauger became

his supervisor—he alleges that Grauger "let" him work "hard on the machine," and kept him moving from machine to machine for no reason, that he asked the plaintiff do "do" more recycle and parts more than usual, despite knowing that the plaintiff had had surgery and had gone to the emergency room many times, and that Grauger told the plaintiff he didn't care if the plaintiff went back to the hospital and that he needed one more note from the doctor. Id. The plaintiff also alleges that when another employee threatened the plaintiff and the plaintiff reported it to Grauger, Grauger said that the plaintiff had the right to call the police, "but don't forget you are A (Muslim)." Id.

6. As to an inspector named Van, the plaintiff says that Van threatened his life because the plaintiff reported Van to the supervisor for taking parts from the garbage and "he rejected." Id.

7. Finally, regarding payroll specialist Yovencka Humphrey and plant manager Kristy Cook, the plaintiff says that he kept reporting to them all the time (presumably reporting the above problems) and that they promised him they'd "stop it," but that they provided no help. Id. He says they asked him to be quiet and work safely and be careful, but he ended up calling the police; the plaintiff alleges that because he called the police, Humphrey and Cook suspended him, and later fired him. Id.

For relief, the plaintiff asks the court to require the defendant to "stop doing immoral and inhuman acts against other people because of (Religion, color, sex) Because we all same and we are all Sons of God." Id. at 4. He also asks the court to require the defendant to pay him for "all this damage

3

happened to [him]," including suffering, humiliation, pain, racism and emotional stress. Id.

The plaintiff attached to the complaint Dismissal and Notice of Rights Form from the EEOC, and a cover letter. Dkt. No. 1-1. The cover letter was from the "investigator who investigated [the plaintiff's] charge of discrimination against . . . Qure Medical." Id. at 1. The investigator explained,

> A dismissal has been issued in your charge because there is insufficient legal evidence to determine that the Respondent's actions violated federal employment discrimination law. Specifically, the evidence gathered does not support your allegation that you were discriminated against on the basis of your religion (Muslim) and disability in that you were subjected to harassment, denied holiday pay, denied promotion and denied accommodate in violation of Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990, as amended. EEOC has reviewed the rebuttal information you provided at the Milwaukee EEOC office and via your March 14, 2019 dated rebuttal letter. Please note, EEOC is in receipt of the text messages you sent to Ms. Humphrey wherein you complain of discrimination. However, the number you sent the messages to appears to be an office/land line which cannot receive text message. During the course of the investigation, EEOC requested additional information from the employer. Unfortunately, however, it did not provide the substantive evidence of discrimination and does not change the investitive results[.]

Id. at 1. The Notice of Rights form is dated May 21, 2019, and informs the plaintiff that he had ninety days from receiving the notice to file suit in federal court. Id. at 2. (The plaintiff filed his complaint within that time period.)

Before the court had an opportunity to screen the plaintiff's complaint, Qure Medical filed a motion to dismiss it. Dkt. No. 5. The defendant argued that the complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). Id. at 3-4. The defendant pointed out that the plaintiff's allegations were vague and general, that many of them had nothing to do with the

plaintiff's religion or race and that he made only a couple of allegations that appeared to involve adverse employment actions against him. The defendants asked that, if the court elected not to dismiss the complaint, it require the plaintiff to clarify it. Id. at 5.

On August 9, 2019, the court issued an order explaining to the plaintiff that he needed either to respond to the defendant's motion to dismiss his case or file an amended complaint to try to address the issues the defendant raised in that motion. Dkt. No. 9. The court gave the plaintiff a deadline of August 28, 2019 to either file an amended complaint or respond to the motion to dismiss. Id. at 2. A few days later, the plaintiff asked for another month to have his lawyer look over his file. Dkt. No. 11. The court granted that request, and extended the deadline for the plaintiff to respond to September 30, 2019. Dkt. No. 12.

The plaintiff has not filed either an amended complaint or a response to the motion to dismiss. On August 20, 2019, the court received a letter from the plaintiff. Dkt. No. 13. He began by explaining that he'd used Google Translate to translate his words into English, and so he wasn't sure whether the words he wrote in the letter were what he intended. Id. at 1. He went on to say that he believed he was subjected to "Racial Discrimination And Pressure At Work," which caused him psychological and health problems. Id. He asked the court to require the defendant to provide him with his entire employment record, copies of all complaints he'd made while employed with the defendant, copies of notes from his doctor, and an explanation of why he was fired. Id. The plaintiff says

5

at the end of the letter that he believes he has a right to "knock all the doors," and indicates that in addition to the lawsuit, he would contact Human Rights Watch, the news, the mayor of Milwaukee and the senator of Wisconsin. Id. at 3.

In addition, on September 26, 2019, the court received a document from the plaintiff titled "Response to the Defendant's Motion to Dismiss!!!" Dkt. No. 17. The plaintiff asks the court to appoint a lawyer to represent him because the lawyer with whom he spoke didn't want to take his case. He says he's seen and contacted lots of lawyers but that none of them will take his case. Id.

The court begins with the plaintiff's request that the court appoint a lawyer to represent him. In a civil case, the court has the discretion to recruit lawyers for people who can't afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). To show the court that he has tried to find a lawyer on his own, the court requires a plaintiff to contact at least three attorneys, and to provide the court with (1) the attorneys' names, (2) their addresses, (3) the date and the way the plaintiff attempted to contact them, and (4) the attorneys' responses (what they said).

After a plaintiff demonstrates that he has made a reasonable attempt to find an attorney on his own, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a

layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff says that he has tried to find a lawyer on his own, but he has not provided the court with any names or letters from the lawyers saying that they won't represent him. Even if the plaintiff had given the court the names of the lawyers he'd talked to and what they said, the court would not appoint a lawyer to represent the plaintiff at this stage. It is not clear whether the plaintiff even has a lawsuit to pursue. The defendant is correct that the plaintiff has not given the court or the defendant enough information to allow either of them to determine whether he has stated a claim for which this court can grant relief. The court already has given the plaintiff one chance to amend his complaint. It will give him a second, last chance to do so. If the plaintiff files an amended complaint, and if the court decides that the complaint can proceed in federal court, the plaintiff can renew his motion to appoint him a lawyer at that time.

The plaintiff has asked the court to require the defendant to provide him with certain documents. It is too soon for the plaintiff to make such a request, and he didn't make the request in the right way.

There are steps that the parties must take in a federal lawsuit. In a case where the plaintiff doesn't have a lawyer, the first step is for the court to review the complaint (or for the defendant to review it) and decide whether the complaint states a claim or claims for which a federal court can grant relief. If the complaint does state such claims, the next step is for the defendant to "answer," or respond to, the complaint. After the defendant has filed its "answer," the court asks the parties to suggest a schedule for doing things like exchanging documents and filing motions. The court looks at the schedule the parties suggest, and if the schedule looks reasonable, the court adopts that schedule. *Only after the court has issued a "scheduling order" may the parties start what is called the "discovery" process.* The discovery process requires the parties to ask *each other* for information and for documents. There are rules in federal court that allow the parties to ask for this information. Federal Rule of Civil Procedure 33 allows parties to give each other up to twenty-five written questions to answer (the questions are called "interrogatories"). Fed. R. Civ. P. 34 allows parties to ask each other to produce documents or other evidence. Fed. R. Civ. P. 36 allows parties to ask each other to admit certain facts. Parties to a lawsuit can use all of these tools to ask each other for information about the case, but *only after the court has issued a scheduling order* setting deadlines for conducting discovery.

Courts do not get involved in exchanging discovery, unless a party has made a valid discovery demand on the other side and the other side has refused to respond to that demand. If a party refuses to respond to a valid discovery demand, Civil Local Rule 37 (E.D. Wis.) says that the party who asked for the discovery should try to work things out with the refusing party. If the parties can't work things out, the party asking for the discovery may file a motion asking the court to compel the opposing party to produce the discovery. It is not proper, however, to ask a court to order the other side to produce discovery unless (a) the court has issued the scheduling order, (b) the party has asked the other side for discovery, (c) the other side has refused a valid request and (d) the parties have tried to work out their disagreement but failed. The court will deny the plaintiff's motion to order the defendant to produce documents.

As to the defendant's motion to dismiss, the court has noted that the defendant is correct that the complaint does not give the defendant or this court enough information to determine whether the plaintiff has stated a claim. There is a lot of information missing from the plaintiff's complaint. It appears he may have worked at Qure Medical, but he doesn't say that. He doesn't say when he started working there, or what his job was. The plaintiff mentions racism, but he does not identify his race. He does say that he is Muslim, and he implies that he thinks someone discriminated against him because he was Muslim, but he doesn't explain why he believes that. It appears that the plaintiff may have told the EEOC that he felt he was discriminated against

because he is disabled. But the complaint does not identify his disability; he simply says that he had to have surgery and that he had to go to the emergency room many times. The plaintiff does not provide any dates in the complaint—he doesn't say when any of the things he describes happened. He may not remember or know the exact dates, but the plaintiff hasn't said in what years these things occurred. The plaintiff alleges that some of the people he identified made him work hard for no reason. Making someone work hard doesn't necessarily violate a federal law. The plaintiff says that some of the people knew he was supposed to be on light duty, but he doesn't explain how they knew that. The plaintiff says he was denied an inspector position, but he doesn't say what he believes the reason was for his being denied the position. He says that he was suspended, then fired, for calling the police, but he doesn't say when he called the police, when he was suspended, when he was fired. He doesn't say what he was told by the people who fired him.

    The plaintiff ought to be able to provide this information to the court. The court is sending him a blank complaint form along with this order. At the top of the form, he should write the word "Amended" next to the word "Complaint." He should write the case number for the case—19-cv-971—in the space provided for the case number. He should list all the organizations, companies or people he wants to sue on page one, under "(Full name of defendant(s))." On the second page, under "B. STATEMENT OF CLAIM," the plaintiff should tell the court where he worked and when. He should tell the court his race or ethnicity (if he thinks that he was discriminated against because of that). He

10

should tell the court his religious affiliation (if he thinks he was discriminated against because of that). If the plaintiff thinks he was discriminated against because of a disability, he should explain what that disability is. He should explain *why* he thinks that the discrimination was the result of his race/ethnicity, religion or disability—did someone say something about his race or ethnicity or disability? He should explain how each person violated his rights—how each person discriminated against him—*when*, and *where*. The plaintiff should be aware that it isn't illegal for a supervisor to check a person's work, or to require a person to work hard. It isn't illegal to deny a person a promotion, unless the reason for the denial was discrimination. It isn't even illegal to fire someone, as long as the reason is not discrimination or retaliation.

The court will give the plaintiff a deadline by which to file an amended complaint. The plaintiff must file the amended complaint in time for the court to *receive* it by that date. If the plaintiff files an amended complaint by the deadline the court sets, the court will consider whether it states a claim for which a federal court may grant relief. But if the plaintiff does not file an amended complaint by the date the court sets, the court will dismiss this case for the plaintiff's failure to diligently pursue it.

The court **GRANTS** the defendant's motion to dismiss the complaint. Dkt. No. 5.

The court **DENIES** the plaintiff's motion for an order directing the defendant to provide documents. Dkt. No. 13.

11

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 17.

The court **ORDERS** that the plaintiff must file an amended complaint, complying with this order, in time for the court to receive it by the end of the day on **November 1, 2019**. If the court does not receive an amended complaint from the plaintiff by the end of the day on, November 1, 2019, the court will dismiss the case for the plaintiff's failure to diligently pursue it. See Civil L.R. 41 (E.D. Wis.).

Dated in Milwaukee, Wisconsin this 8th day of October, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**