UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FOUAD ALI,

        Plaintiff,

  v.

        Case No. 19-cv-971-pp

QURE MEDICAL,

        Defendant.

**ORDER DENYING PLAINTIFF'S REQUEST TO APPOINT COUNSEL (DKT. NO. 19) AND GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 20)**

The plaintiff is representing himself. On July 8, 2019, he filed a complaint suing the defendant, "Qure Medical," for discrimination and harassment by various supervisors and employees. Dkt. No. 1. Before the court had the opportunity to screen the complaint, the defendant filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5. The court gave the plaintiff a deadline of August 28, 2019 to either respond to the defendant's motion to dismiss or file an amended complaint addressing the issues the defendant raised. Dkt. No. 9. A few days later, the plaintiff asked for another month to have his lawyer look over his file. Dkt. No. 11. The court granted that request, extending the deadline for the plaintiff to respond to September 30, 2019. Dkt. No. 12. On August 20, 2019, however, the court received a letter from the plaintiff, explaining that he was using Google Translate to translate his filings into English, that he believed

1

he'd been subject to "Racial Discrimination And Pressure At Work" and that he wanted the court to order the defendant to produce his employment record and various other documents. Dkt. No. 13. He also said he believed he had a right to "knock all the doors," and would be contacting Human Rights Watch, the news, the mayor of Milwaukee and the senator of Wisconsin. Id. at 3. On September 26, 2019, the plaintiff filed a response to the defendant's motion to dismiss, which asked the court to appoint him a lawyer. Dkt. No. 17.

On October 8, 2019, the court granted the motion to dismiss and denied the plaintiff's outstanding requests. Dkt. No. 18. The court explained that in this district, before the court will consider appointing a lawyer, the plaintiff must demonstrate that he made a reasonable effort to hire an attorney on his own; he must contact three lawyers and provide the court with their names, addresses, the date and method of communication and the attorneys' responses. Id. at 6. The court explained that if the plaintiff provided that information, the court then would determine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Id. at 6–7 (quoting Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013)). The court explained that it could not grant the plaintiff's request for a lawyer because he did not provide the court with any names or letters from lawyers saying they wouldn't represent him. Id. at 7. The court also explained that it would not have granted his request even if he had presented evidence that he had tried to retain a lawyer, because he hadn't

2

given the court enough information to figure out what whether he had stated a claim. Id.

The court also denied the plaintiff's request for documents from the defendant, because the proper stage of the case for collecting documents had not yet arrived. Id. at 8. The court explained that in cases where the plaintiff doesn't have a lawyer and the court doesn't appoint one, the first step is for the court to review the plaintiff's complaint and decide whether the plaintiff "states a claim" for which a federal court can grant relief. Id. at 8. In other words, the court reads the document to decide if the plaintiff gave enough specific details that, if true, show that some unlawful conduct occurred. Id. Only after the court reviews the complaint and allows the plaintiff to proceed on particular claims may the parties engage in "discovery," which is the legal term for the process of getting documents, statements, records, and any other evidence from the opposing party. Id. at 8–9. Because the court hadn't yet reviewed the complaint, the court denied the plaintiff's request. Id. at 9.

Finally, the court granted defendant's the motion to dismiss the complaint. The court explained that the complaint did not give the defendant or this court enough information to determine whether the plaintiff had stated a claim. Id. at 9. The court observed that (1) the plaintiff didn't clearly state whether he worked for Qure Medical; (2) he didn't say *when* he worked there or what his job was; (3) he alleged racism but didn't identify his race; (4) he alleged discrimination on the basis of his religion (Islam), but didn't explain why he believed that any bad acts were linked to discrimination based on

3

religion; (5) he alleged disability discrimination, but didn't specify his disability; (6) he didn't provide any dates or otherwise specify when any of the alleged events happened; and (7) he didn't allege any conduct that was, standing alone, illegal. Id. at 9–10. The court instructed the plaintiff to file an amended complaint and provide the missing information. Id. at 10. The court further instructed him to explain the who, what, when, where, and how of his claim: what happened? On what dates did it occur? Where did it occur? How did it occur? The court provided the plaintiff with the district's form complaint to help him correct the problems. Id. at 10–11.

On October 18, 2019, the plaintiff filed an amended complaint. Dkt. No. 19. The plaintiff did not use the court's form. This complaint addressed some of the court's prior concerns but not others, and raised a few new ones, as the court will explain below. The complaint also again asked the court to appoint the plaintiff a lawyer. Id. at 3–5. He stated that he had spoken to the law firm Hawkes Quindel, which had rejected his case. Id. He wrote that he called other lawyers, but he did not provide their names or addresses. Id.

A week later, the defendant filed another motion to dismiss for failure to state a claim. Dkt. No. 20. The defendant's one-paragraph motion argued that the plaintiff failed to address some of the court's concerns, including his failure to allege that the alleged adverse actions and harassment were attributable to his religion, "color," or "sex" (the court assumes the defendant meant religion, race or disability). Id. The defendant urged the court to dismiss with prejudice for failure to state a claim. Id.

4

Almost two weeks later, on November 7, 2019, the court received another letter from the plaintiff. Dkt. No. 21. The letter explained that the plaintiff believed his "life is in greater danger now than in the past" because of "constant harassment and threats, They Try kidnapping Me Twice And More Incident During more than three years." Dkt. No. 21 at 1. He said that he "tried over and over and filed a lot of complaints for help, but to no avail." Id. The plaintiff indicated that he is "sure" that Qure Medical was involved with some of the incidents against him, although he doesn't specify which incidents or how Qure Medical may be involved. Id. He stated that he attached a "report from the police" about an incident from September 24, 2019. Id. The "report" appears to be the plaintiff's own hand-written notes of the encounter rather than an actual police incident report. Dkt. No. 21-1. According to the note, the plaintiff was driving three passengers when several assailants opened his car doors, pepper-sprayed him and threatened him and the passengers with a knife and a gun. Id. at 1–2. The notes go on to say that the plaintiff found a police officer who grabbed his wrist while the passengers "told him I'm the driver and he knows the other's they the one attacked us [sic]." Id. at 2. The note ends there. The plaintiff concluded his original letter to the court by asking the court to "expedite the formation of a specialized committee to investigate my case as soon as possible because I am psychologically tired of what is happening to me." Dkt. No. 21 at 1.

As to the letter the court received from the plaintiff after the defendant filed the second motion to dismiss, the court cannot create a "specialized

5

committee" to investigate what happened to the plaintiff. The court's responsibility is to decide "cases" or "controversies" properly brought by the parties. U.S. Const. art. III, §§1–2. The court has no power to investigate alleged crimes or misconduct, or to create a committee to do so. If the plaintiff believes that someone did something illegal, he should file a report with law enforcement authorities.

The court will deny the portion of the plaintiff's complaint in which he again asked the court to appoint a lawyer. The plaintiff provided the court with the identifying information for only one of the law firms or lawyers he contacted, even though the court told him he needed to identify at least three lawyers. But given the plaintiff's issues with language, the court will give him the benefit of the doubt and assume that he contacted at least three lawyers but could not find one to represent him. The court also believes that the plaintiff is having a hard time understanding the litigation process and what is required of him. But it would be fruitless for the court to appoint a lawyer for the plaintiff, because like his first complaint, his amended complaint does not state a claim for which this court can grant relief.

The amended complaint did not address several of the concerns the court identified in its October 8, 2019 order. In that order, the court noted that the plaintiff didn't state whether he worked for the defendant. Dkt. No. 18 at 10. In the amended complaint, the plaintiff alleges that he "started working" for Qure Medical at "1810 Renaissance Blvd., Sturtevant, Wi 53177." Dkt. No. 19 at 1. The complaint then states:

> During The Company ((Temps Now)) Temp to Hire, Since
> Oct/2/2017 End Dec/22/2017
>
> Location:-
>
> 4909 70th Ave.
>
> Kenosha, Wi 53144

Id. The plaintiff alleged that "The Company ((Qure Medical)) Hired Me Since Jan/2/2018 End Sep/2018." Id. In the next sentence, the plaintiff states that October 5, 2017 was, as he remembers it, his third day of work at "The Company." Id. The court can't be sure given the conflicting nature of this information, but it appears the plaintiff may be saying that he worked for the defendant in a temporary position from October to December 2017, and then was hired on a permanent basis in January 2018.

The court also previously pointed out that the plaintiff didn't explain what he did at Qure medical. Dkt. No. 18 at 10. The amended complaint sheds no light on that question.

The plaintiff alleges that on October 5, 2017, his third day of work, he felt exhausted and lost consciousness on the job. Dkt. No. 19 at 1. The plaintiff says "they" called the ambulance for him. Id. He says that the ambulance brought the plaintiff to the hospital, where they tested and diagnosed him with work stress. Id. The plaintiff alleges he went back to work the next day. Id.

The plaintiff contends that after he returned to work, he "Was Always Complained Of Pain In My Stomach With Non Stop ((Back & Forth))." Id. The plaintiff says that "they" didn't take it seriously until he went back to

7

"Emergency" in March of 2018 (the court assumes he means the emergency room). Id. The plaintiff alleges that "they" informed him that he needed to have his appendix removed immediately, either that night or the next morning. Id.

The plaintiff goes on to say that after the surgery, his doctor sent him home with a note for work to inform them that he couldn't work for a few weeks while he recovered. Id. The plaintiff alleges that at some unknown time, he went back to the defendant and gave his doctor note to John Gomez, his supervisor. Id. The plaintiff indicates that Gomez sent the plaintiff "to the machine to work" despite the doctor's note. Id. He says that at the end of his shift, Gomez read the note and told the plaintiff that he wasn't supposed to work at all. Id. The plaintiff alleges that Gomez told him not to come back to work the next day without a doctor's note. Id.

The plaintiff asserts that he brought a doctor's note saying that he shouldn't work on a "machine" and instead should be given light duty. Id. The plaintiff says that someone named "Raymond," whose position was "Lead," put "too much stress" on the plaintiff. Id. He contends that Raymond asked more and more of the plaintiff until Raymond finally told him "if you don't want work on this machine you have to go to home." Id.

Next, the plaintiff alleges the following:

> I Keep Report Every Incident Happens To Me To:-
>
> 1-Bernie He Was A Planet Manager Before Kristy Cook For A While.
>
> 2-Brian.
>
> 3-Yvoncka Humphrey (( Accounting)).

> Every-time They Made A Promise To Stop The Harassment But They Lie, They Give Me Break For A Few Days And Back Again Harassment Me, Not Just That, Others People Started Harassing Me.

<u>Id.</u> at 2. It is not clear whether the plaintiff is asserting that he reported harassment *to* these people, or whether these people were harassing him and he reported that fact to someone else.

The plaintiff asserts that "Raymond GirlFriend ((Joanna))," a quality inspector, would often reject his parts. <u>Id.</u> He says that Joanna once put bad parts in his bag and that he reported her for this, but that nothing happened. <u>Id.</u>

The plaintiff claims that a few weeks later, the defendant switched Gomez, Raymond and other employees to "the first shift" and brought in a different supervisor, Dan Granger, to the plaintiff's shift. <u>Id.</u> He says that "here start the sufferings and pain and harassing and more and more." <u>Id.</u> The plaintiff asserts that he reported the harassment but received no help. <u>Id.</u> The plaintiff indicates that he went to the EEOC, and that a "federal investigator' named Melissa Lawent wrote down his complaints. <u>Id.</u>

The plaintiff claims that every time he applied for a new position, "they" denied him and gave it to someone else. <u>Id.</u> He says that on one occasion, he applied to be the "Lead, Quality Inspector." <u>Id.</u> The plaintiff doesn't explain what happened when he applied for this job. He indicates that on another occasion, the company denied his application to switch from first to second

9

shift, even though the company was hiring and he explained in his application that he wanted to spend more time with his family. Id.

The plaintiff recounts that on a third occasion, he applied to be a quality inspector. Id. He says that Quality Supervisor Stephanie Fallon called him to her office for about five minutes, asked him four or five questions, then sent him back to work. Id. The plaintiff claims that she then came down to where he worked, found a girl she knew and asked the girl to apply for the quality inspector job. Id. The plaintiff alleges that Fallon gave this other girl the position. Id.

The plaintiff asserts that a different quality inspector, Van, repeatedly rejected the plaintiff's parts. Id. The plaintiff alleges that he reported Van for his behavior. Id. The plaintiff claims that Van followed him to the lunch room, clearly angry, and threatened the plaintiff. Id. He reports that Van said, "You Have To Stop Or You Will Killed." Id. The plaintiff alleges that he reported Van to Granger that same night. Id. The plaintiff then says,

> And He [Granger] Promise Me He Will Report Him Tomorrow To The Company But Now He's Mad And Scream At Him And He Was Crying And I Told Him I Feel I Have To Call The Police And ((Granger)) Told Me You Have The Right To Call The Police But Don't Forget You A Muslim.

Id. The court cannot tell who the plaintiff refers to when stating "he" and "him."

The plaintiff alleges that when Granger talked to the company about what happened, "they" asked the plaintiff to wait for two weeks while "they"

10

finished their investigation. Id. After about three or four days, the plaintiff was called into "the office." Id. The plaintiff says that three other people were there: Kristy Cook, plant manager; Yvoncka Humphrey, accounting; and Granger. Id. at 2–3. The plaintiff asserts that he and Granger each shared their version of events. Id. at 3. He says that Cook asked the plaintiff whether he wanted to add or say anything. Id. The plaintiff says that he "Said No Thanks Because I Know How They Treat Me They Will Never Help Me." Id. Cook said okay, told the plaintiff to be careful and safe and stated that they had to "work like a team and family." Id. The plaintiff alleges that "They Did Nothing At All, But The Only Thing Always Get A Break For A Few Days No Harassment And Back Again." Id.

The plaintiff asserts that the harassment continued until he couldn't take the "pain & sufferings" anymore. Id. He says he called the police for help and protection. Id. The plaintiff claims that "he's asking me to push myself more and more and make parts for him." Id. (It's unclear who "he" is.) The plaintiff asserts that he called the police, who reported that they would be coming to check on him in an ambulance. Id. The plaintiff says that "they" (the court assumes he means the ambulance personnel) told him to go home, rest, and return the next day. Id. The plaintiff claims, however, that Granger told "them" he no longer feels comfortable around the plaintiff. Id. The plaintiff alleges that Granger said either the plaintiff had to leave or that Granger had to leave. Id. The plaintiff alleges that he did as he was told and went home. Id.

11

The plaintiff says that the next day, Humphrey called him and sent him a letter suspending him for two weeks while they investigated. Id. The plaintiff claims that he was later fired in September 2018. Id. He indicates that after he was fired, Humphrey told him that he was not allowed to be on the company's property. Id.

The court previously rejected the plaintiff's disability claims because he didn't specify a disability. The amended complaint says that he had his appendix out and that his supervisor made him work on a machine immediately after returning. Dkt. No. 19 at 1. The court cannot tell if the "disability" the plaintiff claims he suffered was the surgery for his appendix, or whether he had some other disability. Under the Americans with Disabilities Act, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. §12102(1). A temporary disability due to having one's appendix removed does not qualify, and the plaintiff does not identify any other disability.

The plaintiff's harassment claims also fail. The plaintiff has not explained what anyone did to "harass" him—did they make fun of him? Call him names? Even where the plaintiff alleged specific acts that might constitute harassment, the plaintiff's claims still fail because he doesn't link any of the conduct to his race (which he still has not identified), religion or alleged disability. He alleges that Joanna often rejected his parts and put bad parts in his bag. Dkt. No. 19 at 2. He alleges that Van threatened to kill him because the plaintiff reported Van for rejecting parts. Id. The plaintiff doesn't link either of these events to the

12

fact that he is Muslim or to his race (whatever it is) or disability. The closest he comes to alleging a religious discrimination is when he alleges that Dan Granger told him "you have the right to call the police but don't forget you a Muslim." Id. The plaintiff does not explain how this constituted discrimination.

The plaintiff is very upset about some things that happened when he was working at Qure Medical. But after two attempts, he has not explained what anyone at Qure Medical did to violate federal law. The court will grant the defendant's motion to dismiss.

The court **DENIES** the plaintiff's request to appoint a lawyer. Dkt. No. 19.

The court **GRANTS** the defendant's motion to dismiss the amended complaint. Dkt. No. 20.

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated in Milwaukee, Wisconsin this 13th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**